The Honorable

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON AT SEATTLE**

SHAZOR LOGISTICS, LLC,

    *Plaintiff,*

v.

AMAZON.COM, LLC and AMAZON LOGISTICS, INC.,

    *Defendants.*

No. 2:24-cv-00968

**MEMORANDUM[1] IN SUPPORT OF PLAINTIFF'S PETITION TO VACATE ARBITRATION AWARD**

---

[1] This Memorandum is filed contemporaneously with Plaintiff's Petition to Vacate Arbitration Award and is accompanied by the Declaration of Daimeon M. Cotton. Counsel understands that the Court may *sua sponte* convert the Petition to a motion.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## I. INTRODUCTION

Plaintiff hereby moves pursuant to sections 10(a)(2) and 10(a)(4) of the Federal Arbitration Act, 9 U.S.C. §§ 10(a)(2) and (4), to vacate the Award issued by Arbitrators Hon. Bruce Heller (ret.), Hon. George Finkle (ret.), Hon. Laura C. Inveen (ret.) in an arbitration administered by the American Arbitration Association ("AAA") (AAA No. 01-22-0004-1948) in which Plaintiff in this case ShaZor Logistics, LLC was a Claimant in the arbitration and Defendants in this case, Amazon.com, LLC and Amazon Logistics, Inc., ("Defendants" or "Amazon"), was the Respondents.

The parties conducted an evidentiary hearing in Arbitration on February 5–6, 2024. The evidentiary hearing involved Plaintiff's retaliation claim under 42 U.S.C. § 1981. ShaZor submitted pre-hearing and post-hearing briefs. A plaintiff establishes a *prima facie* case of retaliation under § 1981 by showing (1) he or she engaged in a protected activity by complaining about race discrimination, (2) the defendant's adverse action against the plaintiff with racially discriminatory motive in mind, (3) there is a causal link between the plaintiff's race discrimination complaint and defendant's adverse employment action. *See Yartzoff v. Thomas*, 809 F.2d 1371 (9th Cir. 1987)(providing the elements of *prima facie* retaliation under § 1981 and applying the *McDonnell Douglas* framework). Causation sufficient to establish the third element may be inferred from circumstantial evidence, <u>such as the defendant's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected activity and adverse employment action</u>. *Yartzoff*, 809 F.2d at 1376.

Amazon terminated ShaZor's DSP contract just months after its owner James Smith complained about race discrimination by Amazon's Management, Regional Manager Daniel Rood and Station Manager Jeff Knapp. ShaZor presented evidence at the evidentiary hearing that it was one of the two top performing companies at Amazon Delivery Station, DDT3. ShaZor presented evidence that after a phone call between Smith, Rood and Knapp, where Rood talked to Smith in a way he had never been spoken to before and came short of calling him the "N-word" Business Coach Sean O'Brien sent Rood a chime message on August 5, 2021, stating that

Memo in Support of Pet. to Vacate Arbitration Award
(No. ) - 1

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

"he is going to learn quickly that not partnering with us is not best for his business." ShaZor submitted a formal complaint of race discrimination against Rood and Knapp on August 10, 2021, which is the opposite of "partnering" with O'Brien, Rood and Knapp. ShaZor presented evidence that after August 10, 2021, Amazon took swift adverse actions against ShaZor that led to its contract termination effective March 31, 2022. Within a matter of a few months, ShaZor went from one of Amazon's top performing DSP's to a contract termination.

The Panel issued an Award on April 3, 2024, in favor of Amazon. The Panel's Award does not discuss or mention ShaZor's most decisive evidence proving retaliation through a direct time relationship. Business Coach Sean O'Brien's chime message to Rood just days after the July 27, 2021, phone call between Rood, Knapp and Smith, buttresses the evidence of intentional retaliation and the weight of *temporal proximity*; he told Rood that Smith "is going to learn quickly that not partnering with us is not best for his business." The words "learn quickly" carry significant legal weight because it defines the *temporal proximity* here as defined in *Yartzoff*. The Panel does not mention O'Brien's chime message to Rood. By refusing to weigh or consider this evidence, the Panel simply ignored that under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 1824–25 (1973), the fact-finder must consider the totality of the evidence. By refusing to weigh or consider this evidence, the Panel simply ignored that under *Yartzoff*, 809 F.2d 1371, the *temporal proximity* between Smith's complaint and the subsequent adverse actions against ShaZor leading to its contract termination is evidence that establishes retaliation. The Panel manifestly disregarded the *McDonnell Douglas* framework depriving Plaintiff of due process under the law. *See Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 641 (9th Cir. 2010).

Amazon's first adverse action after Smith's complaint occurred on September 27, 2021. Amazon gave ShaZor a Breach of Contract on for not having enough routes for "Prime Week," the week of June 20, 2021. ShaZor's Weekly Scorecard for "Prime Week" 2021 states "Fantastic Plus", which is the highest score. The Panel's Award makes a finding of fact that "Claimant was one of approximately 150 DSPs" who received a Breach of Contract for Prime Week violations.

Memo in Support of Pet. to Vacate Arbitration Award (No. ) - 2

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

There is no evidence in the record identifying a single DSP that also received a Breach of Contract regarding Prime Week 2021 like ShaZor, let alone 150. By refusing to consider Plaintiff's decisive evidence (O'Brien's 8/5/21 Chime Message to Rood) while making findings of fact that is not supported by any record evidence, The Panel demonstrates "evident partiality" in favor of Amazon. *Woods v. Saturn Distribution Corp.*, 78 F.3d 424, 427 (9th Cir.1996*)* (holding that to show "evident partiality" in an arbitrator, the plaintiff must establish specific facts indicating actual bias toward or against a party or show that the arbitrator failed to disclose to the parties information that creates "[a] reasonable impression of bias."); *see also see also Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968).

Therefore, the Panel's Award should be vacated for manifest disregard of the law and evident impartiality.

## II.     PROCEDURAL HISTORY

On June 29, 2022, Plaintiff filed a Complaint in the Eastern District of Michigan against Defendants alleging Discrimination and Retaliation in violation of 42 U.S.C. § 1981, Fraudulent Misrepresentation, Fraudulent Inducement, Breach of Implied Covenant of Good Faith and Fair Dealing, Innocent Misrepresentation, and Exemplary Damages. *See* Declaration of Daimeon M. Cotton (cited herein as "Cotton"), Ex. B. On August 4, 2022, Defendants filed a motion to compel arbitration. On September 15, 2022, the court entered an Order granting Defendants' motion to compel Arbitration. Cotton, Ex. Q, Cotton, Ex. CC.

On October 4, 2022, Plaintiff filed a Demand for Arbitration asserting the same claims in the federal court complaint. Cotton, Ex. R. On November 13, 2023, following discovery, Defendants filed a Motion for Summary Judgment seeking dismissal of all claims. On January 6, 2024, the Panel granted Defendants' Motion in Part and Denied it in Part. Cotton, Ex. S. The Panel denied Defendants' motion on retaliation under §1981 and Plaintiff's claims for exemplary damages finding a genuine issue of material fact for hearing; however, the Panel dismissed the remaining claims. *Id*.

Memo in Support of Pet. to Vacate Arbitration Award (No. ) - 3

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

On January 24, 2024, the parties submitted pre-hearing briefs. Cotton, Ex. T. Plaintiff's pre-hearing brief provided the applicable law on the §1981 claim, including *temporal proximity* in retaliation cases, and the applicable evidentiary burdens of production, which held that although a Plaintiff my establish retaliation under §1981 through direct evidence, the Plaintiff may establish retaliation through indirect, circumstantial evidence whereby the Panel must consider the totality of evidence presented. *Id*. at 4–5.

On February 5, 2024, the Panel held a 2-day arbitration evidentiary hearing. James Smith testified as Plaintiff's witness while Daniel Rood and Senior Manager of Program Management Micah McCabe testified as witnesses for Defendants. At the conclusion of the hearing, the Panel permitted post-hearing briefs due by March 8, 2024. On March 8, 2024, the parties submitted post-hearing briefs. Cotton, Ex. U. Plaintiff again provided the applicable law, and Plaintiff discussed evidence of Defendants' intent to retaliate against Plaintiff in relation to *temporal proximity* and the circumstantial evidence which proved retaliation. *Id*. at 10–12 Specifically, Plaintiff discussed the chime message from Business Coach Sean O'Brien to Regional Manager Daniel Rood stating "he is going to learn quickly that not partnering with us is not best for his business." *Id*. at 1, 3, 4. Plaintiff's contract was terminated months after this chime message. *Id*.

On April 3, 2024, the Panel issued an Award in favor of Defendants denying Plaintiff's retaliation claim. Cotton, Ex. V, p.6. The Panel's Award does not mention the chime message between O'Brien and Rood. *Id*. The Panel's Award does not mention the *temporal proximity* of Plaintiff's complaint and his contract termination. *Id*. The Panel's Award concludes that 150 DSPs received breaches of contract like Plaintiff; however, there is no evidence in the record showing any breaches of contracts issued to other DSPs. *Id*. at 3. The Panel holds that there was no evidence of retaliation which is in direct contradiction to their Summary Judgement decision that there was evidence creating a genuine issue of material fact regarding retaliation. *See* Cotton, Exs S and V.

Memo in Support of Pet. to Vacate Arbitration Award (No. ) - 4

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

### III. FACTS

Amazon represented that start-up costs for DSPs would be as low as $10,000 annual revenue potential 1 million dollars to 4.5 million dollars, and annual profit potential of 75 thousand dollars to 300 thousand dollars. Cotton, Ex. W. ShaZor performed at a high level meeting and exceeding Amazon's representations as follows: ShaZor's gross income and net profits for 2019 were $1,434,857 and $400,000, respectively. Cotton, Ex. W. ShaZor's gross income and net profits for 2020 were $3,405,931 and $844,132, respectively. ShaZor's gross income and net profits for 2021 were $2,488,790 and $551,181, respectively. ShaZor's gross income and net profits for 2022 were $483,278 and $80,949, respectively. *Id.*

From November 2018 when ShaZor first started delivering for Amazon to August 2021 when ShaZor complained about race discrimination, ShaZor performed under the contract with no issues and Amazon renewed ShaZor's contract with no problems. On July 27, 2021, Amazon's Regional Managers Daniel Rood and Jeff Knapp conducted a chime call with James Smith (owner of ShaZor) purportedly to discuss ShaZor's hiring and route commitments; however, Rood spoke to Smith in a way that he had never been spoken to before and demanded that he attend twice weekly calls. Cotton, Ex. C, Day 1, p. 60–61.

On August 5, 2021, Business Coach Sean O'Brien sent Rood a chime message regarding James Smith stating, "he is going to learn quickly that not partnering with us is not best for his business." Cotton, Ex. E.

On August 10, 2021, Smith submitted an internal complaint of race discrimination about Rood's conduct. Cotton, Ex. G. Amazon assigned employee Morgan Lublin to investigate Smith's race discrimination complaint. Cotton, Ex. X, p. 35:21–36:11; 62:1-64:23; 76:18–68:1; 72:6–18. Lublin received a copy of Smith's complaint. *Id.* Lublin informed Rood about Smith's race discrimination complaint against him and she submitted her investigation report, including Smith's race discrimination complaint, to Amazon. *Id.*

Memo in Support of Pet. to Vacate Arbitration Award
(No. ) - 5

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

On September 27, 2021, the company received its first ever Breach of Contract from Amazon for not having enough routes during "Prime Week," the week of June 20, 2021. Cotton, Ex. H. This was issued three months after the fact and even though the weekly performance scorecard from Amazon Central for that week was scored "Fantastic Plus." Cotton, Ex. D. Amazon set the route numbers extremely high and Smith could not request lower routes; nevertheless, ShaZor's performance was high based on Amazon weekly scorecards. Amazon recognized ShaZor's high performance during that period by paying for dinner of all company drivers, yet ShaZor still received a breach of contract. Cotton, Ex. C, Day 1, p. 71.

On October 29, 2021, ShaZor received a second Breach of Contract for a driver finishing a route in a step van for a driver who went home sick. Cotton, Ex. I. The driver who went home sick was authorized to drive a step van. The driver told the company he finished the route in a regular van, which the company discovered later was not true. Cotton, Ex. C, Day 1, p. 145–146. Amazon in the past has issued a ticket or infraction to a particular driver in driver involved incidents. *See Id.* Amazon at the station level or region level decided to punish the whole company.

On November 11, 2021, ShaZor received a third Breach of Contract for not having enough routes for Peak Season. Cotton, Ex. J. This Breach of Contract caused the weekly performance Scorecard from Amazon Central to be locked in the Poor category, resulting in loss of Amazon incentives through-out Peak Season. Cotton, Ex. C, Day 1, p. 48. The combination of COVID and Amazon raising the number of routes during the pandemic made it unrealistic for ShaZor to meet hiring demands. Amazon indicated that ShaZor could cure this Breach of Contract by February 3, 2022. Cotton, Ex. M. In January 2022, Smith received an email from Amazon that the company had cured/fixed this Breach of Contract successfully. *Id.* Unbeknownst to Smith, the 3rd Breach of Contract automatically triggers a review for non-renewal of the contract. Cotton, Ex. C, Day 2, p. 340.

Memo in Support of Pet. to Vacate Arbitration Award (No. ) - 6

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

On November 15, 2021, Business Coach Nancy Grott started working for Amazon. Cotton, Ex. K. 38:3–40:11, 55:12–56:4, 61:2–61:24. Although Smith stopped communicating with Rood and Knapp after the July 27, 2021, call, Grott had no issues getting in contact with Smith to address their questions. *Id*. at 38:3–40:11, 55:12–56:4, 61:2–61:24. Rood accused Smith of not actively sending drivers through DOT training, however, Grott discovered that Smith was actively sending drivers through training. *Id*. Rood accused Smith of not having any plans to hire; however, Business Coach Grott discovered Smith had plans to hire. *Id*., Cotton, Ex AA. Smith worked with Grott to address Rood's concerns. *Id*. Smith developed a plan and Grott made a proposal to Rood which included: reallocating at least 5–10 steps vans and rescinding the reliability Breach of Contract. *Id*. Cotton, Ex. BB.

ShaZor lost drivers to FedEx and UPS because they were paying more. Cotton, Ex. C, Day 1, p. 171. The pandemic created attrition challenges for all DSPs. *Id*. at 114. Despite these challenges, ShaZor's performance was still rated by Amazon as great until Amazon locked ShaZor in poor status following Smith's discrimination complaint. *Id*. at p. 48. Amazon rejected the proposal and none of Smith's requests were accepted.

On December 21, 2021, Smith received an email from Grott, advising Smith to self-terminate because Amazon was not going to renew the contract, Cotton, Ex. L, but that same day, Grott received confidential information that ShaZor might be renewed yet she did not inform Smith. Cotton, Ex. Y. Grott and Rood received confidential information about ShaZor's renewal status. *Id*. This was the first time Rood had received confidential information about a DSP's renewal status.

On February 24, 2022, Amazon notified Smith that ShaZor's contract would not be renewed, and the company's last day would be March 31, 2022. Cotton, Ex. N, and Ex. O. Rood has provided feedback to Business Health regarding DSP performance that impacts renewals, including feedback on ShaZor, which was not produced in discovery. Rood did an escalation for ShaZor refusing to communicate with him after the July 27, 2021, call, which was a factor in

Memo in Support of Pet. to Vacate Arbitration Award (No. ) - 7

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

deciding nonrenewal. Cotton, Ex. F. Lublin's race discrimination investigation notes were a factor in deciding nonrenewal.

From weeks 1 through 47 in 2021, the scorecard evaluations identified ShaZor's delivery performance was weekly at Great, Fantastic or Fantastic Plus. Cotton, Ex. ZZ, weeks 1 through 47. The third Breach of Contract in November 2021 locked ShaZor's scorecards at "poor" at the end of 2021 and triggered automatic review for non-renewal of the contract. From weeks 1 through 47 in 2021, the reliability section on the scorecard is marked, "coming soon," which means that ShaZor was being targeted for a data point not yet authorized throughout the first 47 weeks. *Id*. ShaZor did not have any breaches of contract before September 2021 and Amazon's weekly scorecards continued to show high performance. *Id*.

In Amazon's 10/4/21 Business Review of ShaZor, Amazon recognizes ShaZor as one of its top performing DSPs in 2021. Ex. P.

### IV. ARGUMENT

**A.     The Award Should Be Vacated for "Manifest Disregard of the Law"**

To vacate an arbitration award for manifest disregard of the law, "[i]t must be clear from the record that the arbitrators recognized the applicable law and then ignored it." *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 641 (9th Cir. 2010) (alteration in original) (citation and internal quotation marks omitted). Thus, to find manifest disregard a court must find two things: the relevant law must be clearly defined, and the arbitrator must have consciously chosen not to apply it. *See Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir.1995); *M & C Corp. v. Erwin Behr GmbH & Co.*, 87 F.3d 844, 851 n.3 (6th Cir. 1996). The Ninth Circuit has vacated arbitration awards where the arbitrator blatantly disregards express terms of the parties' agreements. *See ASPIC Eng'g &amp; Constr. Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1168 (9th Cir. 2019); *Pac. Motor Trucking Co. v. Auto. Machinists Union*, 702 F.2d 176, 177 (9th Cir. 1983); *see also Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 682–83 (2010). But in those cases, the arbitrator "underst[oo]d and correctly state[d] the law, but proceed[ed] to disregard the same." *Bosack v. Soward*, 586 F.3d

Memo in Support of Pet. to Vacate Arbitration Award (No. ) - 8

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1096, 1104 (9th Cir. 2009); see *ASPIC Eng'g &amp; Constr. Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1167–68 (9th Cir. 2019).

Here, the parties submitted pre-hearing and post-hearing briefs. Claimant's brief states the controlling legal principles of law for retaliation under §1981. 42 U.S.C. § 1981(b) encompasses retaliation. *CBOCS v., Inc. v. Humphries*, 553 U.S. 442, 457 (2008). A plaintiff prevails on a retaliation claim under § 1981 by establishing that, but for the protected activity, it would not have suffered loss of a legally protected right. *Comcast Corp. v. Nat'l Ass'n African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020). When deciding retaliation cases under 42 U.S.C. 1981, courts use the same framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 1824–25 (1973); *see also Manatt v. Bank of America, Na*, 339 F.3d 792 (9th Cir. 2003).

A plaintiff establishes a *prima facie* case of retaliation under § 1981 by showing (1) he or she engaged in a protected activity by complaining about race discrimination, (2) defendant's adverse action against plaintiff with racially discriminatory motive in mind, (3) there is a causal link between plaintiff's race discrimination complaint and defendant's adverse employment action. *Id.* at 801; *see also Yartzoff*, 809 F.2d 1371. Causation sufficient to establish the third element of the *prima facie* case may be inferred from circumstantial evidence, such as defendant's knowledge that plaintiff engaged in protected activities and the proximity in time between the protected activity and adverse employment action. *Yartzoff*, 809 F.2d at 1376. The inference of a causal link is strengthened by the closeness in time between particular events. *Id*.

Once plaintiff establishes the *prima facie* case of retaliation, the burden shifts to defendant to produce admissible evidence of a legitimate, nonretaliatory explanation for its decision. *Mannett*, 339 F.3d at 802; *see also Yartzoff*, 809 F.2d at 1376. Although the burden of production shifts, the ultimate burden of persuasion remains with plaintiff. *Yartzoff*, 809 F.2d at 1376. If defendant carries the burden of proof satisfactorily articulating a legitimate, non-retaliatory reason at trial, the legally mandatory inference of retaliatory discrimination arising from plaintiff's *prima facie* case drops away. *Id*. The burden of production shifts back to plaintiff

Memo in Support of Pet. to Vacate Arbitration Award (No. ) - 9

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

to show that the alleged explanation is a pretext for impermissible retaliation. *Id.* at 1377. This burden thus merges with plaintiff's ultimate burden of persuading the court by a preponderance of the evidence that he is a victim of retaliation. *Id*. Plaintiff may succeed "either directly by persuading the court that a discriminatory reason more likely motivated Amazon's nonrenewal or indirectly by showing that Amazon's proffered explanation is unworthy of credence." *Id*.

Here, the Panel's Award does not discuss or mention Plaintiff's most decisive evidence proving retaliation through a direct time relationship. Business Coach Sean O'Brien chime message to Rood on August 5, 2021, just days after the July 27, 2021, phone call between Rood, Knapp and Smith, buttresses the evidence of intent and the weight of *temporal proximity*. O'Brien tells Rood that Smith "is going to learn quickly that not partnering with us is not best for his business." The words "learn quickly" carry significant legal weight because it defines the *temporal proximity* here.

The logic is simple. When Rood escalated the complaint regarding Smith's refusal to communicate with him, Smith did not throw in the towel and acquiesce by talking to Rood. No, Smith provided Amazon the reason why he stopped communicating with Rood and he did so in a formal written complaint of race discrimination. Not only did Smith not partner with O'Brien and Rood (he did not need to communicate with them Cotton, Ex. C, Day 1, p. 90), but he did just the opposite. Smith complained about race discrimination at Rood's hands. What happened next? As O'Brien told Rood, Smith "learned quickly" that "not partnering with them was not going to be good for his business." How quickly did Smith learn? One month after his complaint and every month thereafter until Smith was informed that his contract was not going to be renewed, ShaZor received a Breach of Contract until they hit the magic number of 3 breaches, which would trigger an automatic review for nonrenewal. To use O'Brien's words, Smith learned as "quickly" as possible. The Panel does not mention O'Brien's chime message to Rood. The Panel's is required to consider and weigh Plaintiff's evidence and they did not do weigh or consider the chime message where O'Brien is threatening ShaZor. By refusing to weigh or consider this evidence, the Panel simply ignored that under *McDonnell Douglas,* the fact-finder

Memo in Support of Pet. to Vacate Arbitration Award
(No. ) - 10

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

must consider the totality of the evidence to determine retaliation. By disregarding Plaintiff's evidence, the Panel manifestly disregarded the *McDonnell Douglas* framework depriving Plaintiff of due process under the law. The Panel's Award should be vacated on this basis alone.

**B.      The Award Should Be Vacated for Partiality of the Arbitrators**

To show "evident partiality" in an arbitrator, the plaintiff must establish specific facts indicating actual bias toward or against a party or show that the arbitrator failed to disclose to the parties information that creates "[a] reasonable impression of bias." *Woods v. Saturn Distribution Corp.*, 78 F.3d 424, 427 (9th Cir.1996); *see also Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968). "The alleged partiality must be direct, definite, and capable of demonstration, and 'the party asserting [it] . . . must establish specific facts that indicate improper motives on the part of the arbitrator.'" *Id.* at 329 (*quoting Consolidation Coal Co. v. Local 1643, United Mine Workers of Am.*, 48 F.3d 125, 129 (4th Cir. 1995). Under section 10(a)(2) of the FAA, a reviewing court should vacate an arbitration award if the arbitrators acted with evident partiality. "The party challenging the arbitration decision has the burden of showing partiality." *Woods v. Saturn Distrib. Corp.*, 78 F.3d 424, 427 (9th Cir. 1996). "Evident partiality" may exist where there is actual bias on the part of the arbitrator or where undisclosed facts "might create an impression of possible bias. *Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145, 147–49, 89 S. Ct. 337, 21 L. Ed. 2d 301 (1968) …" In cases of actual bias, the party alleging evident partiality must establish specific facts that indicate improper motives on the part of the arbitrator. *Woods*, 78 F.3d at 427.

The Panel's partiality is demonstrated in the Arbitration Award. The Panel does not consider Plaintiff's decisive evidence of retaliation, O'Brien's 8/5/21 chime message to Rood. However, the Panel's Award in favor of Amazon reference "evidence" that is not in the record. *See* Cotton, Ex. V, p. 3 (the Panel's limited factual finding).

Amazon did not offer any evidence, and neither was any evidence admitted, establishing that "Claimant was one of approximately 150 DSPs" who received a Breach of Contract for Prime Week violations. There is not any evidence in the record to support the Panel's findings of

Memo in Support of Pet. to Vacate Arbitration Award (No. ) - 11

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

fact as quoted above that "ShaZor was treated no differently than other DSPs" or that "150 other DSPs" received breaches of contract regarding Prime Week 2021. There is no evidence in the record identifying a single DSP that also received a Breach of Contract regarding Prime Week 2021 like ShaZor, let alone 150. By refusing to consider Plaintiff's decisive evidence while referencing "evidence" that is not in the record to support their Award in favor of Amazon is blatant partiality. Regarding ShaZor's second Breach of Contract, Amazon has issued a ticket or infraction to the particular driver involved in the incidents. There is no evidence in the record that Amazon has issued a Breach of Contract in lieu of a ticket or infraction to the individual driver. However, the Panel accepts Amazon's argument regarding the second Breach of Contract without any evidentiary basis. Because the Panel ignored ShaZor's evidence while relying on evidence that is not in the record in favor of Amazon, the Panel was partial to Amazon. This Court should vacate its Award in favor of Amazon.

## V.    CONCLUSION

The entire Arbitration Award should be vacated under 9 U.S.C. § 10(a)(2) and (4). Plaintiff seeks a new arbitration hearing with a different arbitrator or new arbitral panel for whatever issues remain after vacation of the Award.

Dated: June 28, 2024.                    Respectfully Submitted,

KELLER ROHRBACK L.L.P.

By: *s/ Nathan L. Nanfelt*
    Juli E. Farris, WSBA No. 17593
    Nathan L. Nanfelt, WSBA No. 45273
    1201 Third Avenue, Suite 3200
    Seattle, Washington 98101
    Tel: (206) 623-1900
    jfarris@kellerrohrback.com
    nnanfelt@kellerrohrback.com

I certify that this memorandum contains 4200 words, in compliance with the Local Civil Rules.

Memo in Support of Pet. to Vacate Arbitration Award (No. ) - 12

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Daimeon M. Cotton (P75563),
*pro hac vice forthcoming*
COTTON LAW CENTER, PLLC
13900 Woodward Avenue
Highland Park, Michigan 48207
Tel: (313) 998-2017
dcotton@cottonlawcenter.com

**Attorneys for Plaintiff SharZor Logistics, LLC**

Memo in Support of Pet. to Vacate Arbitration Award
(No. ) - 13

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384